# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 17, 2023

Lyle W. Cayce
Clerk

No. 21-11157

UNITED STATES OF AMERICA,

*Plaintiff—Appellee,*

*versus*

RUEL M. HAMILTON,

*Defendant—Appellant.*

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:19-CR-83

Before KING, ELROD, and SOUTHWICK, *Circuit Judges.*

PER CURIAM:

The petition for panel rehearing is DENIED. At the request of one of its members, the court was polled on whether to rehear this case *en banc*, and a majority did not vote in favor of rehearing (FED. R. APP. P. 35 and 5TH CIR. R. 35).

In the *en banc* poll, seven judges voted in favor of rehearing (Richman, Jones, Smith, Graves, Higginson, Ho, and Oldham), and nine judges voted against rehearing (Stewart, Elrod, Southwick, Haynes, Willett, Duncan, Engelhardt, Wilson, and Douglas).

No. 20-40359

Jennifer Walker Elrod, *Circuit Judge*, joined by Willett, Duncan, and Wilson, *Circuit Judges*, concurring in the denial of rehearing en banc:

This case was about statutory interpretation and jury instructions—not the First Amendment. In considering Defendant Ruel Hamilton's appeal from his conviction under 18 U.S.C. § 666(a)(2), the unanimous panel explained that the jury was not instructed that a *quid pro quo* was required for conviction. *United States v. Hamilton*, 46 F.4th 389, 398–99 (5th Cir. 2022). The statute requires such an instruction. It is for that reason alone that Hamilton must be tried again. True, we also recognized that First Amendment problems "lurk[ed] . . . beneath the surface" of the statutory-interpretation question. *Id.* at 398 n.3. But we explicitly declined to address those problems. *Id.* Even so, the dissenting opinion construes our unremarkable decision as having "turned the First Amendment on its head." *Post* at 6. Respectfully, that conjures up a constitutional problem where none exists.

As is clear from the record, the district court did not address whether § 666 might violate the First Amendment. At oral argument, Hamilton's counsel eschewed any reliance on the First Amendment. And the panel opinion mentions the First Amendment only twice: to note the district court said nothing on the subject, and to explain that the panel was saying nothing on the subject. *Hamilton*, 46 F.4th at 393, 398 n.3. In short, the dissenting opinion's focus on the First Amendment is misplaced. And so although that opinion laments several of our court's recent decisions, there is no need to address the First Amendment cases invoked by the dissenting opinion—or the dissenting judge's separate opinions in those cases. *Post* at 4, 5 n.1, 6 (citing *Villarreal v. City of Laredo*, 44 F.4th 363 (5th Cir. 2022) (Opinion of Ho, J.), *vacated on rehearing en banc*, 52 F.4th 265 (5th Cir. 2022); *Zimmerman v. City of Austin*, 888 F.3d 163, 164 (5th Cir. 2018) (Ho, J., dissenting from denial of

No. 20-40359

rehearing en banc); *Stringer v. Whitley*, 942 F.3d 715, 725 (5th Cir. 2019) (Ho, J., concurring)); *see also Villareal*, 44 F.4th at 478 (Ho, J., concurring).

In addition, I write to correct two errors made by the dissenting opinion. First, it contends that the jury actually *was* instructed on the *quid pro quo* requirement. That is wrong. Over Hamilton's objection, the district court declined to instruct the jury that a *quid pro quo* was required for conviction under the § 666 charge, later explaining its belief that § 666 "does not require *quid pro quo* bribery" and that the relevant law does "not distinguish between bribes and gratuities as the basis for conviction." If the experienced district court crafted the instructions *not* to convey a *quid-pro-quo* requirement, we struggle to see how those instructions could have clearly conveyed that requirement to lay jurors. *See Hamilton*, 46 F.4th at 398–99.

Second, the panel opinion makes no finding of fact on whether there actually was a *quid pro quo* here. In suggesting otherwise, the dissenting opinion mistakes the panel opinion's summation of Hamilton's position for a resolution of disputed facts. *Compare post* at 11, *with Hamilton*, 46 F.4th at 393. Regardless, it is irrelevant that the Government may have offered evidence from which the jury could have found a *quid pro quo*. What matters is whether the jury did in fact make such a finding. It did not. Thus, the conviction must be vacated.

The dissenting opinion's concerns about the possibility of corruption in local government do not transform this case from one about statutory interpretation to one about the First Amendment. Neither do those concerns override the simple fact that the district court did not instruct the jury that a *quid pro quo* was required to convict Hamilton under 18 U.S.C. § 666(a)(2). Accordingly, I concur in the court's decision to not rehear this case *en banc*.

No. 20-40359

James C. Ho, *Circuit Judge*, dissenting from denial of rehearing en banc:

Imagine the following two fact patterns.

Person A is a real estate developer who gives tens of thousands of dollars to a city council member for the purpose of subsidizing the member's personal consumption, not political advocacy. He uses unrecorded cash transactions to evade detection. And in return, the council member uses her office to pursue certain government actions worth millions to the developer.

Person B is a citizen who donates a few hundred dollars to a candidate for city council, for the purpose of supporting political advocacy, not personal consumption. There's no evidence of any *quid pro quo* agreement. There's no evidence the donor will benefit in any way from making the donation. In fact, there's no evidence the donor has ever even met or communicated with the candidate—let alone entered into any corrupt arrangement of any kind.

Now imagine that I ask you to pick which person has engaged in constitutionally protected activity—and which person has committed a crime.

I imagine you'd say that Person B engaged in constitutionally protected activity—and Person A committed a crime.

But you'd be wrong. At least in our circuit.

Five years ago, we upheld a city ordinance forbidding political contributions of more than $350 to a candidate's campaign for city council. We rejected a First Amendment challenge to that ordinance. We did so despite the fact that the Supreme Court held a $300 contribution limit for Vermont state senate candidates an unconstitutional restriction on political advocacy under the First Amendment in *Randall v. Sorrell*, 548 U.S. 230 (2006). *See Zimmerman v. City of Austin*, 881 F.3d 378 (5th Cir. 2018). We then denied rehearing en banc. *See Zimmerman v. City of Austin*, 888 F.3d

No. 21-11157

163 (5th Cir. 2018); *see also id.* at 164 (Ho, J., dissenting from denial of rehearing en banc).

Now fast forward to this case. The United States prosecuted Ruel Hamilton under, *inter alia*, 18 U.S.C. § 666, which targets corruption in federally-funded programs. The prosecution presented substantial evidence that Hamilton had engaged in *quid pro quo* arrangements with two members of a city council. He gave one over $30,000 for her own personal consumption, not political advocacy, and in exchange, she supported his pursuit of tax credits worth millions of dollars. He wrote another member a $7,000 check after that member said he needed $6,200 to pay his mother's personal expenses, and in return, the member promised to place a voter initiative that Hamilton supported on the agenda of the next city council meeting.

A jury convicted Hamilton. But the panel overturned the convictions, citing among other things "a hoard of constitutional problems" and "First Amendment . . . concerns." *United States v. Hamilton*, 46 F.4th 389, 398 n.3 (5th Cir. 2022). And today, our court denies rehearing en banc.[1]

So, to sum up the law of our circuit:

There's zero evidence of corruption by Person B. But we'll deem him a criminal anyway. And we'll justify it by applying a presumption of corruption, not innocence—notwithstanding the First Amendment. *But see*

---

[1] This is not due to any reticence on our court about en banc rehearing. To the contrary, we recently reheard another case en banc involving the First Amendment. *See Villarreal v. City of Laredo*, 44 F.4th 363 (5th Cir. 2022), *vacated on rehearing en banc*, 52 F.4th 265 (5th Cir. 2022). *See also Oliver v. Arnold*, 19 F.4th 843 (5th Cir. 2021) (seven votes in favor of rehearing en banc); *Doe v. Mckesson*, 947 F.3d 874 (5th Cir. 2020) (eight votes in favor of rehearing en banc).

No. 21-11157

*Stringer v. Whitley*, 942 F.3d 715, 725 (5th Cir. 2019) (Ho, J., concurring) ("in our legal system, we presume innocence—not corruption").

Meanwhile, there's ample affirmative evidence of corruption by Person A. But we'll ignore his criminal actions. In fact, we'll invoke the First Amendment to justify overturning his criminal convictions.

This is backwards. Our circuit has turned the First Amendment on its head. I dissent from the denial of rehearing en banc.

## I.

Federal law criminalizes corruption in federally-funded programs. It makes it a crime to "corruptly give[], offer[], or agree[] to give anything of value to any person, with intent to influence or reward an agent [of a local government] in connection with any business, transaction, or series of transactions of such [local government] involving anything of value of $5,000 or more." 18 U.S.C. § 666(a)(2).

A jury convicted Hamilton of two counts under § 666(a)(2). But the panel overturned his convictions. In doing so, the panel decided an issue of first impression for our circuit: Does § 666(a)(2) criminalize only *quid pro quo* bribery? Or does it additionally criminalize gratuities to local officials even in the absence of reciprocity—a *quid* without a *quo*?

The panel endorsed the former view—§ 666 applies only to *quid pro quo* bribery. In doing so, the panel noted that it was putting our circuit on the short end of a "lopsided split" on this issue—joining the First Circuit against the Second, Sixth, Seventh, Eighth, and Eleventh Circuits. 46 F.4th at 396.

What's more, the panel placed us on the short end of an admitted circuit split in an area of obvious public concern—public corruption. And it did so based on, among other things, "a hoard of constitutional problems" and "First Amendment . . . concerns." *Id.* at 398 n.3.

No. 21-11157

All of this should've been more than sufficient to warrant en banc review.

But what's worse, it was entirely unnecessary for the panel to wade into the circuit split, because this case could have easily been affirmed on the basis of *quid pro quo* corruption. After all: The district court instructed the jury on *quid pro quo* corruption. The parties litigated this case as a *quid pro quo* corruption case throughout the proceedings below. The prosecution presented ample evidence to support a *quid pro quo* conviction. And the jury convicted accordingly.

So there was no need to take sides in this split. We could have, and should have, affirmed the convictions regardless.

## A.

The panel claimed that the district court instructed the jury that it did not need to find evidence of *quid pro quo* corruption. It also theorized that the prosecution presented insufficient evidence of *quid pro quo* corruption. I respectfully disagree with the panel on both fronts.

1.    The panel's primary theory for reversing the § 666(a)(2) convictions was error in the jury instructions.

Specifically, the panel complained that the district court "told the jury that neither a *quid-pro-quo* exchange nor any 'official act' by the councilmembers was required." 46 F.4th at 393. "The district court believed that § 666 criminalized mere gratuities and did not require a *quid pro quo*." *Id.* at 394. So "the jury instruction . . . did not convey" that "§ 666 does, in fact, require a *quo*; a *quid* alone will not suffice." *Id.* "Thus, Hamilton's convictions must be vacated." *Id.*

But just read what the jury was instructed: Under § 666, the prosecution must show that Hamilton

No. 21-11157

entered into a corrupt agreement to provide things of value with the intent to influence or reward the person for whom the influence or reward was intended on any question or matter which may be then or would thereafter be pending before that person, whether or not that person actually acted in accordance with the agreement. . . . It is sufficient if the thing of value is given with the intent that the agent of the local government will exercise particular kinds of influence as specific opportunities arise.

So the district court instructed the jury to determine whether Hamilton had entered into a "corrupt agreement" to provide a "thing of value"—the *quid*. The jury also had to determine whether Hamilton acted "with the intent" to receive in return the official's "influence" on matters "pending before" them "as specific opportunities arise"—the *quo*.

2. Moreover, the United States presented compelling evidence that Hamilton engaged in *quid pro quo* corruption with two members of the Dallas City Council—Carolyn Davis and Dwaine Caraway.

Hamilton gave over $30,000 to Davis—not as campaign contributions given to support First Amendment-protected activity, but as bribes meant to line her pockets for personal consumption. In exchange, Davis leveraged her position as Chair of the Dallas Housing Committee to support Hamilton's tax credit application, which would have netted him millions of dollars.

Specifically, Hamilton wrote $14,500 worth of checks, purportedly to support a non-profit organization, but that was in fact secretly funneled to Davis for her personal use. The United States also presented evidence that Hamilton gave Davis an additional $21,000 in cash to avoid a paper trail. In one exchange, Davis waited in Hamilton's car as he withdrew $5,000 from an ATM, as evidenced by video camera footage from the ATM. Hamilton also made other cash withdrawals that were followed by recorded telephone conversations referring to cash payments that he made to Davis.

In return, Davis took multiple official actions to favor Hamilton. She (1) leveraged her influence as the Chair of the Dallas Housing Committee to advocate for Hamilton's Royal Crest project to receive state tax credits worth at least $3.8 million, even though the project wasn't in her district, (2) voted in favor of the project, (3) moved to adopt the Housing Committee's recommendation before the City Council, and (4) agreed to lobby the relevant state agency in her official capacity.

Hamilton also gave Caraway a $7,000 check after Caraway made clear that he needed $6,200 to pay his mother's personal expenses. In return, Caraway agreed to place a voter initiative that Hamilton favored on the agenda of the next city council meeting.

3. The panel contends that the prosecution failed to press a *quid pro quo* theory in district court, and did so only for the first time on appeal. *See id.* at 399 ("[T]he government proceeded on a gratuity theory and only now says that it could have won either way.").

But Hamilton repeatedly argued during pre-trial briefing (and in all capital letters to boot) that "THIS CASE IS ABOUT BRIBERY, NOT GRATUITIES." He also noted the prosecution "seems to agree that this case is about bribery, not gratuities."

And the United States not only presented ample record evidence of the *quo*—it repeatedly referenced the *quo* during closing argument. As the prosecution explained: "It's illegal for the public official to ask [for money], if the public official is doing that with intent to be rewarded for their action, and it's darn sure illegal to pay it if the intent is to . . . influence that public official when you have business before them. . . . Hamilton is giving things of value to Ms. Davis for official support on his developments; . . . they're working together. . . . This Defendant provided a number of things of value to Ms. Davis in return for her official support. . . . You saw . . . a $7,000 check

No. 21-11157

to get [Caraway] to talk to the Mayor and help in the future. . . . Davis was soliciting checks . . . from [Hamilton] in her official capacity for something in return."

And in response to his motion for judgment of acquittal, the prosecution stated that Hamilton was charged and convicted "of bribing Davis in return for her official action on Hamilton's Royal Crest project" and "of bribing Caraway in return for Caraway's official action in getting a referendum . . . on the council agenda and in return for future action with regard to Hamilton's real estate developments in Caraway's district."

The district court likewise thought that the case was about *quid pro quo* bribery, and found the evidence sufficient to establish *quid pro quo* bribery. *See United States v. Hamilton*, 2021 WL 5178463, at *6 (N.D. Tex. Nov. 8, 2021) ("Sufficient evidence was presented at trial to establish that Hamilton and Davis had an agreement in which Hamilton provided things of value in exchange for Davis exercising her influence over his LIHTC projects pending before the City Council and Dallas City Housing Committee.").

## B.

The panel's remaining theories for reversal likewise hold no water.

1.     The panel intimated that there was no *quid pro quo* here because Hamilton "received nothing tangible in return." 46 F.4th at 391. The panel reasoned that the tax credits he sought "were offered not by the City of Dallas, but by the Texas Department of Housing and Community affairs (a state agency)." *Id.* The city council merely voted "to 'recommend' a slate of projects to the state agency for these tax credits." *Id.* "Alas, the state agency did not grant any low-income-housing tax credits to any of the real-estate projects the City Council recommended." *Id.* As the panel put it, "§ 666 does, in fact, require a *quo*; a *quid* alone will not suffice." *Id.* at 394.

No. 21-11157

But I have difficulty with the panel's suggestion that there's no *quid pro quo* here simply because Davis ultimately failed to deliver on her end of the bargain when a state agency refused to go along.  A simple hypothetical should suffice:  If I bribe every member of the House of Representatives to send a bill I favor to the Senate, and the Senate then fails to pass my bill, am I innocent of *quid pro quo* bribery, just because the Senate didn't approve the legislation?  Of course not.

2.     The panel also credited Hamilton's argument that he was just "helping a friend out."  *Id.* at 393.

But there's no need for a jury—or our court—to be so credulous. Hamilton didn't present, and certainly doesn't identify, any record evidence of an actual preexisting friendship with these officials.  Nor does he present any evidence of a pattern of such generous gift giving to any of his real friends.

So the jury was entitled to doubt Hamilton's "friendship" narrative. Indeed, imagine if it were otherwise.  If the panel is right that a jury is not entitled to convict under these facts, then we would presumably be required to reverse *every* bribery conviction, so long as the defendant utters (without proof) that he's just "helping a friend."  (Meanwhile, a $350 donation to a candidate who actually is a friend—somehow *that's* corrupt under *Zimmerman*?)

## C.

The panel decision is difficult to defend.  But a concurring opinion today tries to do so.  So I offer a few brief thoughts in response.

1.     The concurring opinion curiously claims that the panel opinion didn't actually raise any First Amendment concerns.  To quote the concurring opinion, "[t]his case was about statutory interpretation and jury instructions—not the First Amendment."  *Ante*, at 2.

No. 21-11157

But just read what the panel opinion said:

> Lurking just beneath the surface is a hoard of constitutional problems raised by a broad reading of § 666. *See* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 247 (2012) ("A statute should be interpreted in a way that avoids placing its constitutionality in doubt."). Treating § 666 as though it covers all sorts of interactions with local public officials raises First Amendment, federalism, and due-process concerns. . . . We need not reach those issues in this case because we can construe the text in a way that comports with the Constitution.

46 F.4th at 398 n.3.

In other words, the panel opinion expressly invoked "a hoard of constitutional problems" "[l]urking just beneath the surface" to justify its interpretation of § 666 and reversal of Hamilton's convictions. *Id.* It did so explicitly to "avoid[] placing its constitutionality in doubt." *Id.* (quotations omitted). It specifically leads off with "First Amendment . . . concerns." *Id.* And it concludes that its interpretation "comports with the Constitution." *Id.*

Perhaps the concurring opinion regrets the language of the panel opinion. But it cannot erase it.

I would take the panel at its word. It included this language because the panel believes what it says—it believes the convictions present "First Amendment concerns." I simply disagree. The First Amendment protects political advocacy, not corruption. So we should have affirmed. But the panel reached the opposite conclusion. And our court now denies rehearing en banc.

Accordingly, I see no way to escape the conclusion that, by leaving intact our court's First Amendment analysis in both *Zimmerman* and

No. 21-11157

*Hamilton* (while displaying no such reticence in other First Amendment cases), we are turning the First Amendment upside down.

2.      The concurrence contends that I have misread the jury instructions. *Ante*, at 3.  To support this charge, however, the concurrence does not invoke the jury instructions themselves—which I quote verbatim, *supra*, at 7–8, but goes unmentioned in the concurrence and panel opinion.

Instead, the concurrence quotes other statements made by the district court, in another proceeding, away from the jury.  But the issue is not what the district court may have *thought* at one time or another.  The issue is what the district court *instructed the jury*.

I would read the jury instructions by reading the jury instructions.[2]

3.      Finally, the concurrence tries to reassure the public that Hamilton may be "tried again."  *Ante*, at 2.  It even acknowledges that "the Government may have offered evidence from which the jury could have found a *quid pro quo*."  *Id.* at 3.

But that's exactly why we should've just affirmed the convictions.  As the government's rehearing petition states:  "No error exists here because, based on precedent and consistent with this Circuit's pattern charge, the charge as a whole required a *quid pro quo*."  But "even assuming charge error,

---

[2] Alternatively, the concurrence focuses on what the jury instructions *don't* say.  It contends that, "[o]ver Hamilton's objection, the district court declined to instruct the jury that a *quid pro quo* was required."  *Ante*, at 3.  But that's only because the jury instructions already required a *quid pro quo*, as I've already explained.  *See supra*, at 7–8.  So the instructions were already "clear" enough on this point, as reflected in the transcript of the charge conference on June 23, 2021.  Indeed, the government repeatedly reaffirmed throughout that § 666 prohibits bribes, not gratuities:  "The statute in § 666 allows anything of value to be a bribe. . . . For example, giving someone a job could be a bribe."

The concurrence also suggests that we defer to "the experienced district court."  *Ante*, at 3.  But I would've affirmed.  It's the concurrence that demands reversal.

No. 21-11157

the government's prosecution theory and the trial evidence overwhelmingly confirm the requisite *quid-pro-quo* exchange—rendering any error harmless."

Retrial is neither legally necessary, nor a good use of public resources.

\* \* \*

There was no need for the panel to put us on the short end of a lopsided circuit split. We should have affirmed the convictions regardless.

But even worse, our circuit is getting the First Amendment backwards in case after case. The freedom of speech guaranteed to every citizen protects political advocacy—not corruption.

I dissent from the denial of rehearing en banc.